Otashe GOLDEN, M.D., Plaintiff,

v.

SOUND INPATIENT PHYSICIANS MEDICAL GROUP, INC., and Does 1–10, inclusive, Defendants.

No. 2:14–cv–00497–TLN–EFB.

United States District Court, E.D. California.

Signed March 13, 2015.

Filed March 17, 2015.

Gregory Martin Finch, Signature Law Group, Sacramento, CA, for Plaintiff.

Marcia A. Washkuhn, Kutak Rock LLP, Omaha, NB, Matthew C. Sgnilek, Kutak Rock LLP, Irvine, CA, for Defendants.

## ORDER GRANTING DEFENDANT'S MOTIONS TO DISMISS

TROY L. NUNLEY, District Judge.

This matter is before the Court pursuant to Defendant Sound Inpatient Physicians Medical Group, Inc.'s ("Defendant") Motion to Dismiss. (ECF No. 34.) Plaintiff Otashe Golden, M.D. ("Plaintiff") filed an Opposition to Defendant's motion. (ECF No. 44.) The Court has reviewed and considered the arguments in Defen-

dant's Motion to Dismiss and Reply, along with Plaintiff's Opposition. The Court hereby GRANTS Defendant's Motion to Dismiss with leave to amend.

## I. *FACTUAL AND PROCEDURAL BACKGROUND*

Plaintiff is the majority shareholder in California Hospitalist Physicians, Inc. ("CHP"). (ECF No. 34 at 6.) In 2009 CHP contracted with Dameron Hospital Association ("DHA") to provide hospitalist services. (ECF No. 34 at 6.) The contract expired on April 4, 2012. (ECF No. 34 at 6.) Defendant was chosen to replace Plaintiff as the new hospitalist group for DHA. (ECF No. 34 at 6.) DHA asked community physicians to work with Defendant. (ECF No. 34 at 6.)

In the Second Amended Complaint ("SAC") Plaintiff alleges that on April 4, 2012, she entered into agreements with several doctors to provide hospitalist services for their patients. (ECF No. 33 at ¶ 7.)

Plaintiff allegedly provided a list to Defendant that contained the doctors that designated Plaintiff as the hospitalist for their patients. (ECF No. 33 at ¶ 8.) This list was posted in the Emergency Room. (ECF No. 33 at ¶ 9.) Plaintiff alleges that Defendant's Medical Director, Case Manager, and Hospitalist routinely instructed hospital staff to ignore the designation list and admit Plaintiff's patients as Defendant's patients. (ECF No. 33 at ¶ 10.)

Plaintiff initially filed a complaint on February 18, 2014. (ECF No. 1.) The aforementioned complaint was dismissed because Plaintiff failed to specify proper jurisdiction. (ECF No. 13.) Plaintiff then filed the First Amended Complaint on April 28, 2014. (ECF No. 14.) The First Amended Complaint again failed to plead Plaintiff's citizenship and was dismissed. (ECF No. 32.)

Plaintiff filed the Second Amended Complaint and Demand for a Jury Trial on July 29, 2014, alleging interference with a prospective economic advantage, violation of California Business and Professions Code section 17200, and interference with the right to practice a profession. (ECF No. 33.)

Defendant contends that Plaintiff's Second Amended Complaint is both factually and legally deficient, and thus moves this Court to dismiss Plaintiff's Second Amended Complaint with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 34.)

## II. *STANDARD OF LAW*

Federal Rule of Civil Procedure 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See Ashcroft v. Iqbal,* 556 U.S. 662, 678–79, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the claim … is and the grounds upon which it rests." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal quotations omitted). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

On a motion to dismiss, the factual allegations of the complaint must be accepted as true. *Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972). A court is bound to give plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *Retail Clerks Int'l Ass'n v. Schermerhorn,* 373 U.S. 746, 753 n. 6, 83 S.Ct. 1461, 10 L.Ed.2d 678 (1963). A

plaintiff need not allege " 'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (citing *Twombly*, 550 U.S. 544, 556, 127 S.Ct. 1955 (2007)).

Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of factual allegations." *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n. 2 (9th Cir.1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955; *see also Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged[.]" *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 697, 129 S.Ct. 1937 (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955). Only where a plaintiff fails to "nudge[ ] [his or her] claims . . . across the line from conceivable to plausible[,]" is the complaint properly dismissed. *Id.* at 680, 129 S.Ct. 1937. While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678, 129 S.Ct. 1937. This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679, 129 S.Ct. 1937.

In ruling upon a motion to dismiss, the court may consider only the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201. *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir.1988); *Isuzu Motors Ltd. v. Consumers Union of United States, Inc.*, 12 F.Supp.2d 1035, 1042 (C.D.Cal.1998).

If a complaint fails to state a plausible claim, " '[a] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.' " *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir.2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir.1995)); *see also Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir.2009) (finding no abuse of discretion in denying leave to amend when amendment would be futile). Although a district court should freely give leave to amend when justice so requires under Rule 15(a)(2), "the court's discretion to deny such leave is 'particularly broad' where the plaintiff has previously amended its complaint[.]" *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir.2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir.2004)).

### III. *ANALYSIS*

Plaintiff alleges interference with a prospective economic advantage (Count I), a

violation of California Business and Professions Code section 17200 (Count II), and interference with the right to practice a profession (Count III). (ECF No. 33.) The Court dismisses Count I, Count II, and Count III with leave to amend. The Court addresses each of Plaintiff's Causes of Action separately below.

### a. Interference with a Prospective Economic Advantage (Count I)

 Plaintiff's first cause of action alleges interference with a prospective economic advantage. The elements for such a claim are as follows: (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1153, 131 Cal.Rptr.2d 29, 63 P.3d 937 (2003); *Buckaloo v. Johnson*, 14 Cal.3d 815, 827, 122 Cal.Rptr. 745, 537 P.2d 865 (1975). Defendant asserts that: (1) Plaintiff failed to establish an economic relationship between herself and a third party with the probability of future economic benefit; (2) Defendant has not alleged to have nor has committed any intentional act; and (3) Defendant has not interfered with any existing relationship between Plaintiff and a third party. (ECF No. 34 at 2.)

The Court finds that Plaintiff has met elements (2), (4) and (5) [1] and thus, focuses its analysis on elements (1) and (3).

### i. Economic relationship between plaintiff and some third party with the probability of future economic benefit to the plaintiff

Defendant alleges that Plaintiff has not established an economic relationship or probability of future relationship. (ECF No. 34 at 2). Plaintiff bases her claim upon agreements she alleges she entered into with several doctors. (ECF No. 33 at ¶ 7.)

 Defendant argues that Plaintiff's claim for interference with a prospective economic advantage fails because Plaintiff failed to establish intentional interference based upon a contract and because Plaintiff failed to attach or allege the substance of the contract. (ECF No. 34 at 10.) In order to establish intentional interference based upon a contract, a party is required to: (1) set out the written contract in verbatim in the complaint; (2) attach the contract as an exhibit; or (3) plead in full in accordance with the contract's legal effect. *Staples v. Arthur Murray*, 253 Cal. App.2d 507, 513, 61 Cal.Rptr. 103 (1967). Defendant incorrectly argues that Plaintiff was required to have a legally binding contract. However, interference with a prospective economic advantage, a tort that similarly compensates for the loss of an advantageous economic relationship, does not require the existence of a legally binding contract. *Reeves v. Hanlon*, 33 Cal.4th 1140, 1152, 17 Cal.Rptr.3d 289, 95 P.3d 513 (2004). Thus, Plaintiff was not required to have a legally binding contract to bring this particular claim.

Further, Defendant argues that Plaintiff failed to establish an economic relationship between herself and an identifiable third

---

**1.** The Court finds that Plaintiff has properly pleaded the following: (2) that there was knowledge of the relationship (ECF No. 33 at 13); (4) there was an actual disruption of the relationship (ECF No. 33 at ¶ 15); and (5) that Plaintiff suffered economic harm as a result of Defendant allegedly instructing staff to ignore the designation list. (ECF No. 33 at ¶¶ 10 & 16.)

party. (ECF No. 34 at 10.) However, Plaintiff specifically pleaded that she entered into a relationship with several doctors, who were third parties to Plaintiff's relationship with Defendant. (ECF No. 33 at ¶ 7.) Defendant relies on the reasoning in *Roth v. Rhodes*, 25 Cal.App.4th 530, 546, 30 Cal.Rptr.2d 706 (1994). In *Roth* the court explained that a party cannot maintain a claim where the existing relationship is speculative. *Id.* However, Plaintiff alleged that she entered into a relationship with several named doctors, which was more than the speculative nature of the unknown patients in *Roth*. Plaintiff is not required to allege " 'specific facts' beyond those necessary to state [her] claim." *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955. By stating that she entered into agreements with doctors, Plaintiff met the burden of providing the necessary facts to allege that she had an economic relationship between herself and the doctors.

Defendant relies on *Westside Ctr. Assoc. v. Safeway Stores 23, Inc.*, 42 Cal.App.4th 507, 525, 49 Cal.Rptr.2d 793 (1996) to argue that Plaintiff did not demonstrate "the existence of a specific economic relationship." (ECF No. 34 at 9.) In *Westside*, the court described how the defendant's tortious conduct must interfere with a specific existing relationship using the precedent set forth in *Rickards v. Canine Eye Registration Fdtn., Inc.*, 704 F.2d 1449 (9th Cir.1983). *Westside*, 42 Cal.App.4th at 525, 49 Cal.Rptr.2d 793. In *Rickards*, the plaintiffs were veterinarians who could not acquire the certification necessary to perform eye examinations in order to list dogs in the defendant's registry of canine eye diseases. *Rickards*, 704 F.2d at 1452. The plaintiffs alleged that the defendant's establishment of the registry disrupted the veterinarians' economic relationship with dog owners. *Id.* The court affirmed a directed verdict for the defendants stating that the evidence failed to establish "the *existence of a specific economic relation-*

*ship* between [the plaintiff] and third parties...." *Id.* at 1456 (emphasis added). The court concluded that the veterinarians had no specific relationship with potential registry clients, and their lack of certification did not interfere with an "ongoing business relationship" between the veterinarians and their regular clients, who continued to see them for other purposes. *Id.* According to the *Rickards* court, a defendant's tortious conduct must interfere with a specific existing relationship, not simply with the formation of one in the future. *Id.; see also Westside Ctr. Assoc.*, 42 Cal. App.4th at 525, 49 Cal.Rptr.2d 793.

Plaintiff specifically claimed that she had an economic relationship with the specified doctors. (ECF No. 33 at ¶ 12.) Plaintiff's claim is distinguishable from an unknown group of speculative future patients with no actual agreement in place. The plaintiffs in the cases that Defendant cites only speculated about future economic relationships. *See Westside Ctr. Assoc. v. Safeway Stores 23, Inc.*, 42 Cal.App.4th 507, 525, 49 Cal.Rptr.2d 793 (1996) (Plaintiff did not succeed where the economic relationship was purely hypothetical). However, here Plaintiff is alleging specific, current economic relationships with named doctors.

■ Plaintiff also has the burden of proving that there was the probability of economic benefit with a third party. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1153, 131 Cal.Rptr.2d 29, 63 P.3d 937 (2003); *Buckaloo·v. Johnson*, 14 Cal.3d 815, 827, 122 Cal.Rptr. 745, 537 P.2d 865 (1975). Defendant argues that Plaintiff failed to identify a future economic benefit. (ECF No. 24 at 11.) The law precludes recovery for overly speculative expectancies by initially requiring proof the business relationship contained " 'the probability of future economic benefit to the plaintiff.' " *Westside*, 42 Cal.App.4th

at 522, 49 Cal.Rptr.2d 793 (citing *Youst v. Longo,* 43 Cal.3d 64, 71, 233 Cal.Rptr. 294, 729 P.2d 728 (1987)). Though it is necessary to infer that there would have been some benefit to the Plaintiff but for Defendant's interference, "the chance the expectancy otherwise would have occurred is necessarily a matter of some uncertainty." *Westside,* 42 Cal.App.4th at 522, 49 Cal. Rptr.2d 793.

Plaintiff stated that she entered into agreements with a group of doctors that would allow her to provide hospitalist services to their patients. (ECF No. 33 at ¶ 7.) Plaintiff further alleges that Defendant explicitly instructed hospital staff to ignore the designation list that provided that the specific doctors' patients would be directed to Plaintiff. (ECF No. 33 at ¶ 10.) The Court could infer that but for Defendant's alleged interference, Plaintiff would have had the opportunity to work with the doctors that she had entered into agreements with, thus receiving the economic advantage of more patients. However, this is not readily apparent. Plaintiff does not provide any details about what the agreements entail, such as whether they were exclusive or not. Furthermore, it is unclear whether the economic benefit would have resulted from the relationship with the third party doctors, or the speculative relationship with unknown future patients.

Therefore, given the facts presented by Plaintiff, the Court notes that it is unclear whether Plaintiff has met her burden of establishing that she has an economic relationship with a third party with the probability of a future economic benefit.

### ii. *Intentional acts on the part of the defendant designed to disrupt the relationship*

 Defendant alleges that Plaintiff has not proven that Defendant has committed any intentional wrongful act. (ECF No. 34 at 11.) The Court agrees.

 "[T]he act of interference with prospective economic advantage is not tortious in and of itself." *Korea Supply Co. v. Lockheed Martin Corp.,* 29 Cal.4th 1134, 1159, 131 Cal.Rptr.2d 29, 63 P.3d 937 (2003). To state a claim for intentional interference under California law, a plaintiff must allege that "the defendant engaged in an independently wrongful act," that is "wrongful by some legal measure other than the act of interference itself." *Korea Supply Co.,* 29 Cal.4th at 1153, 131 Cal.Rptr.2d 29, 63 P.3d 937 (citing *Della Penna v. Toyota Motor Sales, U.S.A., Inc.,* 11 Cal.4th 376, 393, 45 Cal.Rptr.2d 436, 902 P.2d 740 (1995)). This is understood as an act "proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Korea Supply Co.,* 29 Cal.4th at 1159, 131 Cal.Rptr.2d 29, 63 P.3d 937. In *Korea Supply Co.,* Korea Supply Company satisfied the independent wrongfulness requirement by alleging that the defendant engaged in bribery and offered sexual favors to key Korean officials in order to obtain a contract from the Republic of Korea. *Id.* The specific bribery alleged was independently unlawful under the Foreign Corrupt Practices Act. *Id.* Here, Plaintiff has not alleged any independently unlawful act.

 Plaintiff claims that certain individuals were instructed to ignore the designation list in favor of Defendant. (ECF No. 33 at ¶ 7.) However, "an act must be wrongful by some legal measure, rather than merely a product of an improper, but lawful, purpose or motive." *Korea Supply Co.,* 29 Cal.4th at 1159, n. 11, 131 Cal. Rptr.2d 29, 63 P.3d 937. Plaintiff has not alleged that Defendant's conduct was independently wrongful by a legal measure beyond the interference. For example, Plaintiff has not alleged that Defendant

violated any constitutional, statutory, regulatory, common law, or other determinable legal standard. *See Korea Supply Co.,* 29 Cal.4th at 1159, 131 Cal.Rptr.2d 29, 63 P.3d 937.

Further, "[t]he tort of intentional interference with prospective economic advantage is not intended to punish individuals or commercial entities for their choice of commercial relationships or their pursuit of commercial objectives, unless their interference amounts to independently actionable conduct." *Id.* at 1158–59, 131 Cal. Rptr.2d 29, 63 P.3d 937. Interference based on lawful competition is not actionable. *See generally Bed Bath & Beyond of La Jolla, Inc. v. La Jolla Village Square Venture Partners,* 52 Cal.App.4th 867, 60 Cal.Rptr.2d 830 (1997) (finding that plaintiff did not have a claim for intentional interference with prospective advantage when defendant competitor competed successfully for a lease). As Defendant correctly argues, Plaintiff has not alleged that her agreement with the doctors was exclusive so as to prevent any lawful competition. (ECF No. 34 at 12–13.)

Defendant operated competing hospitalist services. Plaintiff has not alleged any contract or *exclusive* agreement that would preclude Defendant from participating in lawful competition. Thus, because Plaintiff has not stated an independently wrongful act beyond that of tortious interference, her claim must be dismissed with leave to amend.

### b. Violation of California Business and Professions Code Section 17200 et seq. (Count II)

Plaintiff's second cause of action alleges violation of California's Unfair Competition Law ("UCL") pursuant to California Business and Professions Code Section 17200. (ECF No. 33 at ¶ 17–20.) Defendant asserts that the claim is derivative of the other claims made in the Complaint, and

as the other claims fail, this claim fails as a matter of law. (ECF No. 34 at 2.) Defendant argues that this Claim must be dismissed because Plaintiff has failed to establish any independently actionable act to base the unfair competition claim upon. (ECF No. 34 at 14.)

The UCL prohibits "any unlawful, unfair or fraudulent business act." Cal. Bus. & Prof. § 17200. "To bring a UCL claim, a plaintiff must show either an (1) unlawful, unfair, or fraudulent business act or practice, or (2) unfair, deceptive, untrue or misleading advertising." *Lippitt v. Raymond James Fin. Servs., Inc.,* 340 F.3d 1033, 1043 (9th Cir.2003) (internal quotations omitted); *Gardner v. Am. Home Mortgage Servicing, Inc.,* 691 F.Supp.2d 1192, 1201 (E.D.Cal.2010). "[A] practice is prohibited as 'unfair' or 'deceptive' even if not 'unlawful' or vice versa." *Cel–Tech Communs., Inc. v. Los Angeles Cellular Tel. Co.,* 20 Cal.4th 163, 180, 83 Cal.Rptr.2d 548, 973 P.2d 527 (1999).

#### i. *"Unlawful" under the UCL*

"By proscribing 'any unlawful' business practice, 'section 17200 "borrows" violations of other laws and treats them as unlawful practices' that the unfair competition law makes independently actionable." *Belton v. Comcast Cable Holdings, LLC,* 151 Cal.App.4th 1224, 1233, 60 Cal.Rptr.3d 631 (2007) (citing *Cel–Tech Communs., Inc.,* 20 Cal.4th at 180, 83 Cal.Rptr.2d 548, 973 P.2d 527). "[A] violation of another law is a predicate for stating a cause of action under the UCL's unlawful prong." *Berryman v. Merit Prop. Mgmt., Inc.,* 152 Cal.App.4th 1544, 1554, 62 Cal.Rptr.3d 177 (2007). Where a plaintiff cannot state a claim under the "borrowed" law, it cannot state a UCL claim either. *See, e.g., Ingels v. Westwood One Broadcasting Servs., Inc.,* 129 Cal.App.4th 1050, 1060, 28 Cal. Rptr.3d 933 (2005).

■ Defendant is not liable under Bus. and Prof.Code section 17200 for committing 'unlawful business practices' without having violated another law. *Ingels,* 129 Cal.App.4th at 1060, 28 Cal.Rptr.3d 933. In *Ingels* the plaintiff's underlying Unruh Act claim was dismissed, so there was no 'unlawful' act upon which to base the derivative Unfair Competition claim. *Id.* Here, Plaintiff has not alleged any 'unlawful' act to base the Unfair Competition claim upon. Thus, Plaintiff's UCL claim cannot rest upon the UCL's unlawful component.

### ii. "Fraudulent" under the UCL

Additionally, Plaintiff has not shown that Defendant engaged in any fraudulent conduct. "Under Federal Rule of Civil Procedure 9(b), a plaintiff pleading a claim of fraud, or any claim that is 'grounded in fraud' must 'state with particularity the circumstances constituting fraud or mistake.'" *Tuck Beckstoffer Wines LLC v. Ultimate Distribs.,* 682 F.Supp.2d 1003, 1019 (N.D.Cal.2010) (citing Fed.R.Civ.P. 9(b)). "That is, the plaintiff must set forth with particularity the 'who, what, when, where, and how of the misconduct charged.'" *Tuck Beckstoffer Wines LLC,* 682 F.Supp.2d at 1019 (quoting *Vess v. Ciba–Geigy Corp. USA,* 317 F.3d 1097, 1106 (9th Cir.2003)). The plaintiff must also allege the misrepresentations themselves with particularity. *Moore v. Kayport Package Exp., Inc.,* 885 F.2d 531, 540 (9th Cir.1989). "A pleading is sufficient under rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations." *Id.* Here, Plaintiff has not stated with particularity any circumstances constituting fraud. Plaintiff did not allege fraud and therefore did not satisfy rule 9(b). Therefore, Plaintiff's UCL claim cannot succeed on the basis of fraudulent conduct.

### iii. "Unfair" under the UCL

■ "When a plaintiff who claims to have suffered injury from a direct competitor's 'unfair' act or practice invokes section 17200, the word 'unfair' in that section means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cel–Tech Comm'cns, Inc.,* 20 Cal.4th at 187, 83 Cal.Rptr.2d 548, 973 P.2d 527.

Here, Plaintiff alleges that Defendant's conduct "violated the prohibitions of Business and Professions Code section 17200 et seq." (ECF No. 33 ¶ at 19.) Even with the Court liberally construing the facts that Plaintiff has alleged, these facts do not amount to unfair conduct. Plaintiff has not alleged that Defendant acted "unfairly" under the UCL. Further, Plaintiff has not alleged any conduct that approaches a violation of an antitrust law or the policy or spirit of antitrust laws. *See also Stevenson Real Estate Services, Inc. v. CB Richard Ellis Real Estate Services, Inc.,* 138 Cal.App.4th 1215, 1225, 42 Cal. Rptr.3d 235 (2006) (holding that the plaintiff's pleading was insufficient when he failed to allege conduct approaching a violation of an antitrust law or the policy or spirit of antitrust laws). By failing to allege the grounds for which Plaintiff brought her UCL claim, Plaintiff has failed to give Defendant fair notice of what the claim is and the grounds upon which it rests. Therefore, Plaintiff cannot succeed under the "unfair" prong of the UCL.

Plaintiff's claim for violations of the UCL cannot stand because Plaintiff has not alleged that Defendant has engaged in any unfair, fraudulent, or unlawful acts. Therefore, this claim is dismissed with leave to amend.

### c. Interference with the Right to Practice a Profession (Count III)

 Plaintiff's third cause of action alleges Interference with the Right to Practice a Profession. In opposition, Defendant argues that (1) no such cause of action exists absent a complete prohibition on the right to practice a profession, and this cannot be alleged; and (2) Defendant has not and is not alleged to have committed any act that could be interpreted as interfering with Plaintiff's right to practice in the medical profession. (ECF No. 34 at 2.)

#### i. There must be a complete prohibition on the right to practice a profession to allege interference with the right to practice a profession

 It is well established that a cause of action exists when "the right to pursue a lawful business, calling, trade, or occupation is intentionally interfered with either by unlawful means or by means otherwise lawful when there is a lack of sufficient justification." *Willis v. Santa Ana Cmty. Hosp. Ass'n,* 58 Cal.2d 806, 810, 26 Cal.Rptr. 640, 376 P.2d 568 (1962). A cause of action for intentional interference with the right to practice one's profession "requires intentional and malicious acts designed to prevent the plaintiff from practicing her profession." *Love v. Permanente Med. Group,* 2013 WL 1402890, at *3, 2013 U.S. Dist. LEXIS 49750, at *8 (N.D.Cal. Apr. 5, 2013). There must be a complete prohibition on the right to practice a profession to allege interference with the right to practice a profession. *See Love v. Permanente Med. Group,* 2013 WL 1402890, at *3–4, 2013 U.S. Dist. LEXIS 49750, at *9–10 (N.D.Cal. Apr. 5, 2013) (holding that a motion to dismiss was appropriate when the plaintiff did not allege that the defendant had deprived her of other opportunities in her field); *Feather River Anesthesia Med. Group v. Fremont–Rideout Med. Group,* 2007 WL 2430100, 2007 Cal.App. Unpub. LEXIS 7004 (Cal. App.3d Dist. Aug. 29, 2007) (holding that a claim for interference with the right to practice a profession can prevail where plaintiffs were unable to work in an entire geographical area).

Plaintiff relies on the unpublished case *Feather River Anesthesia Med. Group v. Fremont–Rideout Med. Group,* to argue that the claim of interference with the right to practice a profession is recognized as an independent claim in California. (ECF No. 44 at 5.) Defendant, however, correctly argues that *Feather River* is inapplicable because in order to successfully claim interference with the right to practice a profession there must be a complete prohibition on the right to practice a profession. (ECF No. 34 at 2.)

The court in *Feather River* acknowledged that plaintiffs' claim for interference with the right to practice a profession was sufficient. *Feather River Anesthesia Med. Group v. Fremont–Rideout Med. Group,* at *40. However, *Feather River* is distinguishable from this case. The plaintiffs in *Feather River* claimed that the defendants' unlawful anticompetitive conduct caused them actual injury by preventing them from working in the entire citywide market. *Id.* at *40. Here, Plaintiff alleges that she was only prevented from practicing her profession at the named hospital.

Further, in *Love v. Permanente Med. Group,* a motion to dismiss with leave to amend was warranted when the plaintiff did not allege that the defendants deprived her of another opportunity to become employed in her field. *Love,* 2013 WL 1402890, at *3–4, 2013 U.S. Dist. LEXIS 49750, at *9–10. In *Love,* similar to here, the plaintiff's allegations related solely to being deprived of the opportunity to work for her specific former employer. In the instant case, Plaintiff does not allege that Defendant interfered with Plaintiff's right

to practice medicine beyond the scope of the specific hospital in this case. Thus, this claim is dismissed with leave to amend.

## IV. CONCLUSION

For the reasons set forth above, the Court hereby GRANTS Defendant's Motion to Dismiss Plaintiff's Complaint as follows:

1. COUNTS I, II, and III are DISMISSED with leave to amend.
2. Plaintiff is granted 30 days from the date on which this Order is filed to file an amended complaint.
3. Defendant shall file their responsive pleading within 21 days of service of the Third Amended Complaint.
4. Plaintiff is further notified that this action may be dismissed with prejudice under Rule 41(b) if she fails to file an amended complaint within the prescribed time period.
5. If Plaintiff does not submit any amendments, this case will be closed.
6. Plaintiff is notified that if the Third Amended Complaint cannot survive a 12(b)(6) motion, it will be dismissed with prejudice.

IT IS SO ORDERED.